DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| ARROW-POCONO LINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2014-0006 |
| | ) | |
| LOWELL LAND, LLC and | ) | |
| DONALD PENTA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**Attorneys:**
**Scot F. McChain, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiff Arrow-Pocono Lines, Inc.*

**Mark W. Eckard, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Lowell Land, LLC*

**Michael J. Sanford, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Donald Penta*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Plaintiff's "Motion for Partial Summary Judgment as Regards Damages and Lien Priority," filed on July 20, 2015 by Plaintiff Arrow-Pocono Lines, Inc. ("Arrow-Pocono") against Defendants Lowell Land, LLC ("Lowell") and Donald Penta ("Penta"). (Dkt. No. 60). For the reasons discussed below, the Court will grant Arrow-Pocono's Motion for Partial Summary Judgment.

### I. BACKGROUND AND PROCEDURAL HISTORY

In March 2014, Arrow-Pocono filed a Complaint against Lowell alleging causes of action for debt and foreclosure of real property mortgage. (Dkt. No. 1). The Complaint alleged that, on

March 15, 2012, Lowell executed and delivered a promissory note (the "Note") in favor of Arrow-Pocono in the principal sum of $567,500.00, together with interest at a rate of 6.00% per annum, payable in consecutive monthly installments of $4,065.75 and culminating with a final balloon payment of all interest, principal and other charges owed under the Note by March 15, 2015. (Dkt. No. 1, ¶ 4). To secure payment of the indebtedness to Arrow-Pocono under the Note, Lowell executed a "priority mortgage" dated March 15, 2012 (the "Mortgage") over certain property in Estate Southgate, identified as Plot. No. 38 and Plot No. 40 (the "Property"). *Id.* ¶ 6. The Complaint further alleged that Lowell defaulted under the Note and Mortgage for failing to pay principal and interest when due as well as homeowner association dues and taxes. *Id.* ¶ 7. Consequently, Arrow-Pocono declared due the entire unpaid principal sum with all accrued interest and late charges. *Id.* ¶ 8. Arrow-Pocono sought, *inter alia*, foreclosure of its "priority lien," an award of unpaid principal and interest, and leave to recovery any deficiency from Lowell. *Id.* at 3-5.

Lowell was served with the Summons and Complaint on April 9, 2014 (Dkt. No. 3), and filed an Answer on May 27, 2014. (Dkt. No. 4). On June 25, 2014, Arrow-Pocono filed a Motion for Summary Judgment, along with a Memorandum of Law and Statement of Undisputed Facts. (Dkt. Nos. 6, 6-1).

On September 22, 2014, Lowell filed a "Notice of Bankruptcy Filing of Members of Lowell Land, LLC" in which it notified the Court that Theodore W. Thomes and Renee M. Thomes—"the 100% owner(s) of [Lowell]"—had filed a voluntary bankruptcy petition in Maine in August 2014 under Chapter 13 of the Bankruptcy Code. (Dkt. No. 26). In response, Arrow-Pocono filed a "Motion to Strike Suggestion of Bankruptcy," pointing out that the Lowell partners, not the corporation, had filed for Chapter 13 bankruptcy. (Dkt. No. 27). Subsequently, on April 9, 2015, Arrow-Pocono filed "Notice of Order Granting Motion for Release from Stay." (Dkt. No.

2

35). Attached to the filing was an Order from the District of Maine Bankruptcy Court providing that, although the Property was not part of the Debtors' estate and the automatic stay was not applicable to the Property, Arrow-Pocono was granted relief from the automatic stay to pursue any and all rights and remedies against the Property, including a foreclosure sale. (Dkt. No. 35-1).

On October 31, 2014, Arrow-Pocono filed a Motion to Amend its Complaint to add Donald Penta, an alleged junior lienholder, as a Defendant pursuant to 28 V.I.C. § 532. (Dkt. No. 30). The proposed Amended Complaint asserted that Arrow-Pocono's lien on the Property was filed on March 19, 2012, and Defendant Penta's lien was filed on or about April 10, 2013. (Dkt. No. 30-1, ¶¶ 14, 15). On November 25, 2014, the Court granted Arrow-Pocono's Motion to Amend its Complaint. (Dkt. No. 33). The Order directed that Arrow-Pocono file its Amended Complaint "forthwith." *Id*. However, Arrow-Pocono did not file its Amended Complaint until June 3, 2015. (Dkt. No. 38).

On June 9, 2015, the Court held a status conference to clarify the procedural posture of this case, given that Arrow-Pocono's Motion for Summary Judgment on the original Complaint was outstanding, but an Amended Complaint had been filed and Defendant Penta had not been served. Based on the colloquy at the status conference, the Court entered an Order directing Plaintiff to serve Penta with the Amended Complaint and to resubmit its Motion for Summary Judgment on the original Complaint as a Motion for Partial Summary Judgment (because it did not address the priority of liens issue). (Dkt. No. 40). Lowell acknowledged, at the status conference, that there was "no challenge to the legitimacy of Arrow-Pocono's claim that Lowell was liable on the debt and foreclosure causes of action, but that there was an outstanding question regarding the amount of damages." (Dkt. No. 53 at 5).

3

Arrow-Pocono refiled its original Motion for Summary Judgment as an Amended Motion for Summary Judgment (the "Amended Motion"). (Dkt. No. 44). The Court granted in part the Amended Motion to the extent that it found that Plaintiff prevailed on the merits of its debt and foreclosure causes of action. The Court denied in part, without prejudice, the Amended Motion on the issue of damages, finding that Arrow-Pocono had failed to prove the amount of its damages. (Dkt. No. 53). The Court set a schedule for further submissions by the parties on the damages issue. (Dkt. No. 52).

In the meantime, Arrow-Pocono had served Penta with a copy of the Amended Complaint (Dkt. No. 45), and Penta filed an Answer in which, *inter alia*, he admitted that his lien in the amount of $508,723.00 was filed on April 10, 2013. (Dkt. No. 48).

On July 20, 2015, Arrow-Pocono filed the instant Motion for Partial Summary Judgment on the lien priority and damages issues. It argued that its lien on the Property had priority over Penta's lien because: (1) it filed its lien before Penta filed his, and therefore its lien was superior, pursuant to Virgin Islands law; (2) Arrow-Pocono and Lowell intended that Arrow-Pocono's lien be a first priority lien; and (3) Penta failed to "domesticate" his judgment on the Property, issued by a court in Maine, as required by local statutes. (Dkt. No. 60 at 3-5). On the issue of damages, Arrow-Pocono provided a Declaration signed by Jude Kleila, an owner and officer of Arrow-Pocono, in which he stated that the debt owed by Lowell, as well as the costs and fees associated with foreclosing on the Note and Mortgage—which were set forth in the Statement of Indebtedness attached to his Declaration—were true and correct to the best of his knowledge. (Dkt. No. 64-1).[1] The Statement of Indebtedness established Lowell's total indebtedness of $667,719.85 to Arrow-

---

[1] The original Kleila declaration (Dkt. No. 60-1) was unsigned. Arrow-Pocono substituted a signed Declaration in a subsequent filing. (Dkt. No. 64-1).

Pocono as of July 6, 2015, comprised of $561,853.44 in unpaid principal balance; interest from February 1, 2014 through July 6, 2015 of $48,027.20; homeowner's association fees, taxes and associated costs of $23,530.76; and attorney's fees, costs, and expenses of $34,808.51. (Dkt. No. 60-1). Arrow-Pocono provided documentation in support of these figures (Dkt. Nos. 60-1 through 60-7), and showed how it calculated the per diem interest rate of $92.35. (Dkt. No. 60-1).

With regard to attorney's fees and costs, Arrow-Pocono initially submitted, under seal, the billing records of its counsel, Scot F. McChain, Esq. (Dkt. No. 60-9), along with a Motion for Leave to File under Seal (Dkt. No. 62). It also submitted the billing records of its Maine bankruptcy counsel, Eaton Peabody. (Dkt. No. 60-10). The Court denied the Motion for Leave to File under Seal (Dkt. No. 65), following which Attorney McChain re-filed on the public record his firm's billing records in this case, along with a Declaration. (Dkt. No. 66).

In its Memorandum in support of its Motion for Partial Summary Judgment, Arrow-Pocono stated that both the Note and Mortgage provide for recovery of attorney's fees and expenses; that the Court must determine whether counsel's hourly rate is reasonable; and that it is entitled to reimbursement for costs. (Dkt. No. 60). The Memorandum also stated that Attorney McChain, an experienced Senior Partner, charged $350.000 to $450.00 per hour on this matter, totaling $30,481.00 through July 6, 2015. In addition, costs and fees for bankruptcy counsel, paid by Mr. Kliela, totaled $4,274.10. *Id.* Finally, Arrow-Pocono stated that it also seeks reimbursement for costs expended. *Id.* at 6.

On August 19, 2015, Arrow-Pocono filed a supplement to its Motion for Partial Summary Judgment, which included a Declaration of Scot F. McChain and a copy of the attorney's fees request. (Dkt. No. 66, 66-1, 66-2). In his Declaration, Attorney McChain averred that he was engaged by Arrow-Pocono to represent its interests at a contractually-agreed rate of $350.00 per

5

hour, and that he billed 85.1 hours during the course of that representation. He also incurred costs of $426.00. (Dkt. No. 66-1). Attorney McChain observed that the litigation had been complicated by, *inter alia*, Lowell's owner, Theodore Thomes, filing personal bankruptcy in Maine and declaring that that bankruptcy stayed this action—which necessitated hiring bankruptcy counsel in Maine. *Id.* In addition, Attorney McChain noted that he had received some inquiries concerning the possible purchase of the property, and that an offer to purchase was cancelled when it was determined that the Property was in poor condition. *Id.*

Neither Lowell nor Penta filed any Opposition to Arrow-Pocono's Motion for Partial Summary Judgment as Regards Damages and Lien Priority.

## II.   APPLICABLE LEGAL PRINCIPLES

To prevail on a motion for summary judgment, a movant must show that there is "no genuine dispute as to any material fact," and that, on the uncontroverted facts, it is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Bonkowski v. Oberg Indus.*, 787 F.3d 190, 195 n.1 (3d Cir. 2015). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Mahoney v. McDonnell*, 2015 U.S. App. LEXIS 10662, at *10 (3d Cir. June 24, 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met this burden, the non-moving party "must set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations, general denials, or . . . vague statements." *Patterson v. Glory Foods, Inc.*, 555 F. App'x 207, 211 (3d Cir. 2014) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991) (internal quotation marks omitted; alteration in original)); *see also* FED. R. CIV. P. 56(c).

In reviewing a motion for summary judgment, "[a]ll facts are viewed in the light most favorable to the non-moving party, who is 'entitled to every reasonable inference that can be drawn

6

from the record.'" *Seamans v. Temple Univ.*, 744 F.3d 853, 859 (3d Cir. 2014) (quoting *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000)). In addition, "at the summary judgment stage, a court may not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder." *Anderson v. Warden of Berks County Prison*, 602 F. App'x 892, 895 (3d Cir. 2015) (quoting *Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1993) (internal quotation marks omitted)).

The role of the court is to "determine whether there is a genuine issue for trial." *Stiegel v. Peters Twp.*, 600 F. App'x 60, 63 (3d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (internal quotation marks omitted)). A genuine issue of material fact exists when the fact-finder, viewing the record evidence, could rationally find in favor of the non-moving party. *See Anderson*, 477 U.S. at 248. When a genuine issue of material fact exists, summary judgment is inappropriate. *See Fontroy v. Beard*, 559 F.3d 173, 182 (3d Cir. 2009) (citations omitted).

"'Generally, debt actions are well suited for summary judgment. Because of the relative simplicity of the issues involved, suits to enforce promissory notes are among the most suitable classes of cases for summary judgment.'" *LPP Mortgage, Ltd. v. Ferris*, 2014 WL 2459802, at *4 (D.V.I. June 2, 2014) (quoting *Pemberton Sales & Serv., Inc. v. Banco Popular de Puerto Rico*, 877 F. Supp. 961, 971 (D.V.I. 1994)).

### III.   ANALYSIS

**A.  Priority of Liens**

Arrow-Pocono asserts that its lien is a first priority lien because it was filed against the Property before Penta's lien against the Property was filed. (Dkt. No. 60 at 3).

The documents filed in this case show that Arrow-Pocono recorded its Mortgage lien against the Property on March 19, 2012. (Dkt. No. 44-1 at 17). In Penta's Answer to Arrow-Pocono's Amended Complaint, he admits that his lien against the Property was filed on April 10, 2013 in the amount of $508,723.00 plus interest. (Dkt. No. 48, ¶ 13).

Generally speaking, the Virgin Islands is a race-notice jurisdiction. *Brodhurst v. Frazier*, 2012 WL 8123137, at *4 (V.I. Sept. 12, 2012); 28 V.I.C. § 124. The relevant statute, 28 V.I.C. § 124, applies "when one party records a mortgage lien without notice of a previous unrecorded lien." *Chase Manhattan Bank, N.A. v. Miller*, 39 V.I. 123, 130-31, 1998 WL 667790, at *5 (V.I. Terr. Ct. Sept. 15, 1998). *See* Black's Law Dictionary (10th ed. 2014) (defining a race-notice statute as a "recording law providing that the person who records first, without notice of prior unrecorded claims, has priority."); *Moco Invs., Inc. v. United States*, 362 F. App'x 305, 309 (3d Cir. 2010) (defining a race-notice jurisdiction to mean that "as between two competing parties, the interest of the party who first records the instrument will prevail.") (quotation marks omitted).

Here, it is undisputed that Arrow-Pocono recorded its Mortgage lien against the Property over one year before Penta admittedly recorded his lien. There is no evidence in the record, including by Penta, that there was an unrecorded lien of which Arrow-Pocono had notice prior to the time when Arrow-Pocono recorded its Mortgage lien. Arrow-Pocono states that the judgment from the Maine Court that provides the basis for Penta's lien against the Property issued on April 3, 2013. Further, having been served with a copy of the Amended Complaint that sets forth Arrow-Pocono's claim to lien priority, Penta has not disputed Arrow-Pocono's priority status. Accordingly, the Court finds that Arrow-Pocono's lien has priority over Penta's lien.

### B. Damages

As indicated above, Arrow-Pocono provided the requisite support for its damages calculation that Lowell owed $632,911.34 as of July 6, 2015. Arrow-Pocono provided support for the total amount paid by Lowell, which was divided between principal and interest. It also provided a summary, supported by documentation that explained how it had arrived at its damages figure of $561,853.44 in unpaid principal balance, to which were added interest and other fees to arrive at the total amount due. Finally, Arrow-Pocono showed how it calculated the per diem interest rate. (Dkt. Nos. 60-6, 60-7, 60-8).

The Court concludes that Arrow-Pocono has supported its request for damages in the amount of $632,911.34, assessed up to and including July 6, 2015, comprised of $561,853.44 in unpaid principal balance; $48,027.20 in per diem interest; $22,980.70 in homeowner association fees and property taxes; and a $50.00 cost for ordering copies of the tax records. Further, Arrow-Pocono will receive per diem interest from July 7, 2015 up to and including the date this Judgment is issued, and interest at the federal statutory rate thereafter until the Judgment is satisfied.

### C. Attorney's Fees and Costs

Under the terms of the Note, Arrow-Pocono may recover "attorney's fees and court costs" (Dkt. No. 6-1 at 4) and under the terms of the Mortgage, Arrow-Pocono may recover "attorney's fees and expenses." (Dkt. No. 6-1, ¶ 14.2). The Mortgage is "subject to the laws of the U.S. Virgin Islands." (Dkt. No. 6-1, ¶ 32). Title 5 of the Virgin Islands Code, Section 541(b), governs the award of attorney's fees in the Virgin Islands. Thus, the Court will look to the body of case law interpreting 5 V.I.C. § 541(b) for guidance in assessing attorney's fees. Attorney's fees awarded in the Virgin Islands are within the discretion of the Court, and they must be reasonable. *Creative Minds v. Reef Broad.,* 2014 V.I. LEXIS 82, n.2 (V.I. Super. Aug. 12, 2014) ("In a civil action, a

party in whose favor a decision and judgment is rendered may recover reasonable costs and attorney's fees pursuant to 5 V.I.C. §§ 541-547. Awards of attorney's fees under section 541(b) are a matter within the discretion of the . . . Court.") (citations omitted).

### 1. Attorney's Fees

"To determine a fair and reasonable award of attorneys' fees [under § 541(b)], the Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation." *Staples v. Ruyter Bay Land Partners, LLC*, 2008 WL 413308, at *1 (D.V.I. Feb. 6, 2008) (citing cases). The Court undertakes a two-step inquiry when examining the reasonableness of attorney's fees. First, the Court determines whether the hours billed were "reasonably expended," excluding time billed that is "excessive, redundant, or otherwise unnecessary." *Berne Corp. v. Gov't of Virgin Islands*, 2012 WL 369535 at *10 (D.V.I. Feb. 3, 2012) (quoting *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). Second, the Court determines whether the hourly rate sought is reasonable, in comparison to prevailing market rates in the relevant community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *FirstBank Puerto Rico v. Connor,* 2009 WL 2515729, at *1 (D.V.I. Aug. 11, 2009) (same, in context of Virgin Islands debt and foreclosure action); *Staples,* 2008 WL 413308, at *1-*2 (same, in context of Virgin Islands real property proceeding).

First, with regard to the hourly rate, Virgin Islands courts "have generally concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *Anthony on Behalf of Lewis v. Abbott*, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012) (citing cases). Arrow-Pocono's counsel, Attorney Scot McChain, stated in his Declaration that he had been engaged by Arrow-

Pocono to "represent its interests in this action at the contractually agreed rate of $350.00 per hour." (Dkt. No. 66-1).

Notwithstanding that Arrow-Pocono contracted with Attorney McChain for a particular hourly rate, 5 V.I.C. § 541 and associated case law require that an attorney's hourly rate in the Virgin Islands must be reasonable. Citing *Abbott,* 2012 WL 2752154, at *3, this Court has previously found attorney's fees at $300.00 per hour to be at the upper end of reasonableness in the Virgin Islands. *Pollara v. Ocean View Inv. Holding, LLC*, 2015 WL 4735205, at *3 (D.V.I. May 21, 2015); *WDC Miami, Inc. v. NR Elec., Inc*., 2015 WL 127852, at *4 (D.V.I. Jan. 8, 2015). While Arrow-Pocono and Attorney McChain contracted for a $350.00 hourly rate, they have provided no support for the proposition that this rate is reasonable in comparison to prevailing market rates in the Virgin Islands "for similar services by lawyers of reasonable comparable skill, experience, and reputation." *Rode*, 892 F.2d at 1183; *see also Pollara,* 2015 WL 4735205, at *3 (observing that "[t]he burden rests on a fee applicant to produce satisfactory evidence, in addition to counsel's own affidavits, that the rates sought are in line with prevailing rates in the community for similar services, by lawyers of reasonably comparable skill, experience, and reputation," and awarding $300.00 per hour rather than the requested $500.00 per hour); *WDC Miami, Inc.,* 2015 WL 127852, at *4 ("Because counsel has provided no justification for an hourly rate above the $300.00 per hour rate that has been generally deemed to be the maximum reasonable rate in this jurisdiction, the Court will award fees at a rate of $300.00 per hour."); *Flagstar Bank, FSB v. Chapman,* 2014 WL 2933218, at *5 (D.V.I. June 30, 2014) (noting that plaintiff provided affirmations from six Virgin Islands attorneys who aver that the typical hourly rate for similar services charged by comparable attorneys in the Virgin Islands is between $250.00 and $300.00 per hour.").

Accordingly, the Court finds $300.00 per hour is a reasonable hourly rate, and will award attorney's fees at that hourly rate for the hours reasonably expended. Should Arrow-Pocono provide appropriate documentation, prior to the Order Confirming Sale, demonstrating that $350.00 per hour is a reasonable hourly rate consistent with the applicable law, the Court will consider those submissions and adjust the award of attorney's fees accordingly.[2]

Second, with regard to the reasonableness of the time expended, Arrow-Pocono seeks compensation for 84.7 hours of work billed in this matter from February 12, 2014 through July 6, 2015. (Dkt. No. 60 at 6; Dkt. No. 60-9). Arrow-Pocono also seeks reimbursement for attorney's fees and costs for Maine bankruptcy counsel paid by Mr. Kliela, totaling $4,274.10. (Dkt. No. 60-10).

Having carefully reviewed Attorney McChain's billing records, the Court finds the 84.7 hours billed were "reasonably expended." *WDC Miami, Inc.,* 2015 WL 127852, at *4. As shown by the billing records, this is not a run-of-the-mill debt and foreclosure case, given, *inter alia,* that: (1) the principal of Lowell declared bankruptcy—including claiming that the Property was part of his bankruptcy plan and thus staying this case—which necessitated the hiring of bankruptcy counsel in Maine, where the bankruptcy was filed; (2) although the Maine Bankruptcy Court found that the Property was not part of the Debtor's estate, counsel needed to move for release from stay in that Court in order that foreclosure proceedings could continue in this Court; (3) during the course of this case, the principal of Lowell served time in federal prison, which made communication between the parties more difficult; (4) Arrow-Pocono attempted to place the Property under receivership, apparently to collect rents being paid, *see* Dkt. No. 23 at 2; (5) Lowell

---

[2] The Court also notes that the first three items contained in the billing records, dated February 12, 17, and 18, 2014, indicate that Attorney McChain charged $450.00 per hour for legal services.

filed a motion to stay the Motion for Summary Judgment pending further discovery, necessitating further litigation; (6) a subsequent lienholder—Penta—was identified, which required the filing of an Amended Complaint and investigation concerning the priority of the liens; (7) counsel for Lowell pursued settlement discussions with Arrow-Pocono; and (8) two separate entities sought to purchase the Property, requiring discussions and negotiations with Arrow-Pocono and other creditors. All of these aspects of the case added to the expense of litigation. The Court finds that the time spent on discrete tasks was reasonable and not excessive. Accordingly, the Court will award attorney's fees in the amount of $25,410.00, representing 84.7 hours billed at the rate of $300.00 per hour.

Arrow-Pocono also seeks reimbursement for legal fees expended by bankruptcy counsel. Attorney McChain provided the billing records of that firm, Eaton Peabody, showing services rendered from March 2 through 18, 2015, amounting to $3,399.50 in attorney's fees. Bankruptcy counsel was needed, *inter alia*, to perform legal work associated with an objection to confirmation of the Thomes' plan; attendance at a confirmation hearing; and the filing of a motion for relief from stay concerning the Property in order that the instant foreclosure could proceed. (Dkt. No. 60-10). The hourly fees of two lawyers who worked on the case were $295.00 and $300.00. These hourly rates are within the range that the Court has found to be reasonable. The Court has also reviewed the billing records for these two lawyers and finds the hours expended on the various tasks to be reasonable. Accordingly, the amount requested for attorney's fees for these two lawyers, $2,399.50, will be included in the attorney's fees award.

A third person at Eaton Peabody (also identified only by initials) worked on this case. That person's hourly fee was $145.00 and billed a total of $1,000.00. The Court presumes that person is a paralegal. The Court will disallow that $1,000.00 in fees. As indicated above, the

13

reasonableness of attorney's fees in this case is governed by Virgin Islands law. Courts applying such law have declined to award fees for paralegals. *See, e.g., Mahabir v. Heirs of George*, 2014 WL 1392954, at *1 (V.I. Super. Ct. Apr. 4, 2014) ("Defendant has provided no argument or case law demonstrating that 5 V.I.C. § 541(b) stands for the proposition that a prevailing party may obtain law clerk or paralegal fees as part of its award of attorney's fees. Other courts in the Virgin Islands have denied similar fees on this basis."); *Chapa v. Sepe*, 2013 WL 8609242, at *1 (V.I. Super. June 3, 2013) (same); *Morcher v. Nash*, 32 F. Supp. 2d 239, 241 n.1 (D.V.I. 1998) (paralegal fees denied "because no authority [was] advanced for their inclusion"). The Court will therefore allow Eaton Peabody a total of $2,399.50 of the total $3,399.50 requested in attorney's fees.

## 2. Costs and Expenses

Arrow-Pocono seeks reimbursement of $426.00 in costs associated with filing fees for the federal court complaint and lis pendens. Here too, because the Mortgage is "subject to the laws of the U.S. Virgin Islands" (Dkt. No. 6-1, ¶ 32), the Court will look to Virgin Islands law for guidance in determining appropriate costs and expenses.

Title 5, Section 541(a) defines what costs are "allowed in a civil action."[3] "Expenses" are not defined by statute, nor are they defined in the Mortgage or other loan documents.[4] As indicated

---

[3] The costs allowed under Virgin Islands law are: "(1) Fees of officers, witnesses, and jurors; (2) Necessary expenses of taking depositions which were reasonably necessary in the action; (3) Expenses of publication of the summons or notices, and the postage when they are served by mail; (4) Compensation of a master as provided in Rule 53 of the Federal Rules of Civil Procedure; (5) Necessary expenses of copying any public record, book, or document used as evidence on the trial; and (6) Attorney's fees as provided in subsection (b) of this section." 5 V.I.C. § 541(a).

[4] The Supreme Court of the Virgin Islands has opined that costs and expenses do not cover the same outlays of funds in a case. *Terrell v. Coral World,* 55 V.I. 580, 591 n.14, 2011 WL 3492575 (V.I. July 20, 2011).

above, under the terms of the Mortgage, Arrow-Pocono may recover "attorney's fees and expenses." (Dkt. No. 6-1, ¶ 14.2). In order for costs to be reimbursed, they must be reasonable. *See Creative Minds, LLC v. Reef Broadcasting, Inc.,* 2014 WL 4908588, at *1 (V.I. Super. Sept. 24, 2014) (opining that prevailing party in civil action may "recover reasonable costs and attorney's fees" under statute). Similarly, in order for expenses (under the contract) to be reimbursed, they must also be reasonable. *See Rainey v. Hermon*, 2011 WL 4738534, at *6 (V.I. Oct. 6, 2011) (enforcing the terms of a contract, even for legal fees and administrative expenses, "unless the fee is unreasonable."); Rule 211.1.5 of the Virgin Islands Rules of Professional Conduct, adopted by the Supreme Court of the Virgin Islands, effective February 1, 2011 (providing that fees and expenses awarded in the Virgin Islands must be "reasonable").

Although Arrow-Pocono has requested reimbursement for costs, neither of the filing fees fit within the statutory definition of "costs." Rather, the items are properly considered expenses under the contract.

The Court finds that expenses for court filing fees and the filing of lis pendens are reasonable under the contract and will be allowed. *See, e.g.*, *Equivest St. Thomas, Inc. v. Gov't of Virgin Islands*, 46 V.I. 447, 2004 WL 3037953 at *9–*10 (D.V.I. Dec. 31, 2004) (finding filing fees, process service fees, transcript purchase fees, witness fees, and travel expenses to be "reasonable expenses which are normally charged paying clients."). The Court will thus award $426.00 in expenses.

In addition, Arrow-Pocono seeks reimbursement of $53.41 for mailing the Notice of Default from Mr. Kleila to Lowell via FedEx. (Dkt. No. 60-11). The Court finds that expense also reasonable under the contract and will be allowed.

On the other hand, it is well-established that costs such as regular postage, are considered part of "overhead costs" and therefore unreasonable. Such costs are not compensable under § 541. *Creative Minds, LLC.*, 2014 WL 4908588, at *1 ("[T]he Court removes . . . 'overhead costs, such as [non-evidence connected] photocopies, [non-service related] courier service, telephone calls, telecopies, . . . and [regular] postage.") (quoting *Wenner v. Gov't of the V.I.*, 29 V.I. 158, 166 (D.V.I. 1993)). Accordingly, the Court finds that the $9.10 in postage costs requested by bankruptcy counsel are included in overhead costs and thus will be disallowed.

In sum, the Court will allow the following attorney's fees and expenses: $25,410.00 in attorney's fees and $479.41 in expenses, for a total of $25,889.41 to Attorney McChain, and $2,399.50 in attorney's fees to bankruptcy counsel. Accordingly, the total award of attorney's fees and expenses is $28,288.91.

## IV. CONCLUSION

Based on the foregoing, the Court will grant Arrow-Pocono's Motion for Partial Summary Judgment. Arrow-Pocono has demonstrated that it holds a first priority lien on the Property and that Defendant Penta holds a second priority lien. The Court will award a total of $661,200.25 in damages, which includes an award of $28,288.91 in attorney's fees and expenses through July 6, 2015.

An appropriate Order accompanies this Memorandum Opinion.

Date: May 6, 2016 _____/s/_____
　　　　　　　　　　　　　　　　　　　WILMA A. LEWIS
　　　　　　　　　　　　　　　　　　　Chief Judge